DENISE D. ELSTUN, APPELLANT AND CROSS-APPELLEE,
v. MICHAEL D. ELSTUN, APPELLEE AND CROSS-APPELLANT.
589 N.W. 2d 334

Filed February 2, 1999.   No. A-97-892.

Jennifer A. Huxoll, of Legal Services of Southeast Nebraska, for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellee.

Mark J. Young for amicus curiae Nebraska Domestic Violence and Sexual Assault Coalition.

INBODY and MUES, Judges, and BUCKLEY, District Judge, Retired.

INBODY, Judge.

Denise D. Elstun appeals from the district court's refusal to expand the scope of a protection order she had obtained against her husband, Michael D. Elstun (Mike). Mike cross-appeals, arguing that there was insufficient evidence to issue the protection order, that he was denied procedural due process, and that he was denied his right to court-appointed counsel. For the reasons set forth below, we affirm.

## I. STATEMENT OF FACTS

On June 23, 1997, Denise, acting pro se, applied for a protection order against Mike, pursuant to Neb. Rev. Stat. § 42-924 (Reissue 1993), by filling out a preprinted application and affi-

davit form. On that form, the applicant is to check one or more boxes, each of which contains different options regarding the scope of the order. Denise checked only that option that would prohibit Mike from "[e]ntering the premises where I reside."

In the application, Denise described three incidents, which she claimed justified issuance of a protection order. She first alleged that on June 20, 1997, Mike "came out very angr[y] and yelling at me . . . and he poked me very hard in the arm. And pointing his finger in my face yelling at me."

She next alleged that in the evening of June 22, 1997, Mike

knock [sic] on the door demanding to see the kids. Tryed [sic] to come in but I would not let him in he started yelling at me from the drive way telling me he is not giving me any child support. And I shut the door then he pounded very hard on the door.

Finally, Denise alleged that on June 23, 1997, Mike "[b]roke in the house when I was at work my daughter was wit[h] the neighbors. And saw him she went in the [sic] he said he was going threw [sic] my papers and my mail and listening to my messages on the answer[ing] machine."

The district court issued an ex parte protection order that same day, prohibiting Mike from entering Denise's residence. That order contained a notice section advising Mike that a hearing was set for June 30, 1997, at which time, he would have an opportunity to show cause why the protection order should not be extended for 1 year. Mike appeared at the June 30 hearing, pro se, and acknowledged receipt of the protection order. Denise also appeared at the June 30 hearing, represented by counsel.

The trial court asked Denise whether the affidavit and application were correct. She responded that they were. The court then had Mike sworn and questioned him about the incidents described in the application. When the court completed its questioning, counsel for Denise asked leave to question Mike, but that request was denied.

The trial court then called Denise, had her sworn, and questioned her about the incidents described in the application and affidavit. When the trial judge finished questioning Denise and Mike, counsel for Denise requested an opportunity to "ask a

few clarifying questions." That request was denied. The court held that "[b]ased on the evidence that's been provided at the hearing here, I will extend the protection order, as it is currently limited in the Ex Parte Protection Order, for one year from June 23, 1997." Denise's counsel then requested leave to "ask a question," but that request was denied, and the parties were excused.

Denise filed a motion for a new trial on July 8, 1997, alleging that (1) the decision was entered despite an irregularity in the proceedings of the court and was an abuse of discretion, which had denied her a fair trial; and (2) the decision was not sustained by sufficient evidence, as she was denied access to her attorney. In support of that motion, Denise submitted an affidavit by her counsel in which her counsel averred that Denise would have testified that she had inadvertently limited the scope of the protection order and would have asked that the protection order be modified to include the other options on the preprinted application form. The motion for new trial was heard on July 18 and overruled that same day.

It was not until July 30, 1997, that Denise filed a written motion to expand the scope of the protection order entered on June 30. In support of that motion, she submitted an affidavit, in which she reiterated the incidents underlying her original application for a protection order and further averred that she had inadvertently failed to ask for a sufficiently broad order and that the protection order in the form entered was inadequate to protect her. The motion was heard on August 8. At the close of the hearing, the trial court denied the motion, "based on the fact that there is no new allegation in the affidavit that would justify expansion of the protection order."

On August 18, 1997, Denise filed a notice of appeal from the June 30 order entering the protection order and from the denial of her motion for new trial. On September 5, she filed a notice of appeal from the August 8 order denying her motion to expand the protection order. Mike cross-appeals.

## II. ASSIGNMENTS OF ERROR
Denise's assignments of error may be consolidated into four: (1) The trial court erred in refusing to expand the scope of the protection order, (2) the trial court erred in denying her counsel

an opportunity to cross-examine Denise and Mike or to otherwise represent her at the hearing, (3) the trial court abused its discretion in overruling Denise's motion for new trial, and (4) the trial court erred and abused its discretion by not sustaining her motion to expand the protection order.

On cross-appeal, Mike asserts that the trial court (1) erred in continuing the ex parte protection order, (2) denied him his due process rights to a fair hearing before an impartial decision-maker, and (3) erred in not providing him with court-appointed counsel.

### III. STANDARD OF REVIEW

A protection order pursuant to § 42-924 is analogous to an injunction, and accordingly, its grant or denial is reviewed de novo on the record. *Devor v. Devor*, 7 Neb. App. 549, 584 N.W.2d 670 (1998). See *Buda v. Humble*, 2 Neb. App. 872, 517 N.W.2d 622 (1994). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993); *Devor v. Devor, supra.*

A trial judge has broad discretion over the conduct of a trial. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994). A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998).

### IV. ANALYSIS

#### 1. MOOTNESS

Before proceeding to the merits of the case, we first address, on our motion, the issue of whether this matter is moot. "As a general rule, a moot case is subject to summary dismissal." *Duggan v. Beermann*, 245 Neb. 907, 910, 515 N.W.2d 788, 791 (1994).

The record indicates that the 1-year protective order entered by the district court on June 30, 1997, would have

expired, by its own terms, as of June 30, 1998. Once that order had expired, neither Mike nor Denise was affected by it, and any decision by this court would be both irrelevant and unnecessary. "A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation." *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 521, 557 N.W.2d 684, 689 (1997).

■ However, there are exceptions to the mootness doctrine. An appellate court may review an otherwise moot case if it involves a matter affecting the public interest, *Williams v. Hjorth*, 230 Neb. 97, 430 N.W.2d 52 (1988), or when other " 'rights or liabilities . . . may be affected by its determination,' " *Miller v. Dixon*, 176 Neb. 659, 663, 127 N.W.2d 203, 205 (1964) (citing 5 Am. Jur. 2d *Appeal and Error* § 766 (1962)).

■ Protection orders entered pursuant to § 42-924 are ordinarily limited to a 1-year period, meaning that persons in the position of these parties will seldom be able to get an appeal heard and reviewed quickly enough to make the result meaningful to him or her. In that sense, such cases will nearly always be moot. However, the issues raised in this appeal—the prompt and proper disposition of applications for protective orders and the protection of vulnerable persons—are of paramount public interest. In *Williams v. Hjorth*, 230 Neb. at 98-99, 430 N.W.2d at 53, the Nebraska Supreme Court observed:

> In the context of good time credit for presentence confinement when sentenced to a county jail term, because confinement is necessarily 1 year or less, no case could reach this court for review before it became moot. Additionally, the issues involved in this action . . . affect all county jails in the state. Therefore, this appeal must be decided on the merits under the public interest exception to the mootness doctrine.

We apply the same rationale in this case and find that this case falls within the public interest exception to the mootness doctrine. Although we cannot retroactively change the effect and impact of the protective order that was entered between these parties, the public interest in the issues presented by this appeal are such that a decision on the merits is appropriate.

## 2. DENISE'S APPEAL

### (a) Trial Court's Refusal to Expand
### Scope of Protection Order

In Denise's first and fourth assignments of error, she complains that the trial court erred in refusing to expand the scope of the ex parte protection order, both at the June 30, 1997, hearing on extending the ex parte order and upon her subsequent motion to expand the order after it had been entered, which was filed on July 30 and heard on August 8. However, the only issue in this case, at both hearings, was framed by the application and affidavit prepared and submitted by Denise on June 23. That sole issue was whether to extend the ex parte protection order prohibiting Mike from entering the premises in which Denise resided for 1 year. At the outset of the hearing, the following colloquy occurred between the court and Denise: "[Q. Denise] [a]re the contents of [the] Application and Affidavit correct? [A.] Yes, it is [sic]. . . . [Q.] Do you request that I extend the Protection Order? [A.] Yes."

At no point before the court announced its decision on June 30, 1997, did Denise or her attorney indicate that either believed that the existing ex parte protection order was too limited in scope, nor did either indicate that Denise was requesting additional relief from the court, other than the 1-year extension of the protection order entered on June 23. Only after the court had entered its decision on the record extending the protection order for 1 year, as requested, did Denise's counsel make an apparent attempt to raise an issue as to the scope of the order, as demonstrated by the following colloquy:

> [Denise's attorney]: Can I ask a question? What I wanted to do is have the protection order —
>
> THE COURT: Ma'am, —
>
> [Denise's attorney]: You didn't give me an opportunity to cross examine or examine my client, your Honor, when I could have done it when Mr. Elstun was here.
>
> THE COURT: Ma'am, you may step aside. You're excused.

Because this exchange occurred after the court had made its decision, the district court properly refused to entertain any attempt to expand the proceedings beyond the issue framed by

the pleadings, that is, beyond the issue of extending the ex parte protection order, in its original form, for 1 year.

■ Further, we find no error in the trial court's refusal to allow Denise or her counsel to adduce evidence at the June 30, 1997, hearing relating to the scope of the protection order, which, as noted above, was never at issue during the June 23 hearing. " 'The right to introduce evidence depends upon there being an issue of fact as to which it is relevant. . . . [U]nless there is an issue of fact before the court, there is no right to introduce evidence to prove or disprove the fact. . . .' " *Timmerman v. Hertz*, 195 Neb. 237, 241, 238 N.W.2d 220, 223 (1976).

■ We further note, with regard to the June 30, 1997, hearing, that Mike was never provided notice that Denise would seek to expand the scope of the ex parte protection order. Constitutional due process requires notice of a proceeding which advises one of the matters to be considered and which is fair in view of the circumstances and conditions existent at the time. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); *Black v. Black*, 223 Neb. 203, 388 N.W.2d 815 (1986). Thus, the trial court's refusal to expand the scope of the protection order at the June 30 hearing was appropriate on those grounds as well.

### (b) Right to Cross-Examine

■ Denise next complains that the trial court erred by refusing to allow her counsel to question her or Mike following the court's examination of the parties. It is undisputed that a trial judge has broad discretion over the conduct of a trial. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994). A trial court may on its own motion call and interrogate witnesses. See Neb. Rev. Stat. § 27-614 (Reissue 1995). This discretionary power permits the trial court to bring out the true facts of the case, although the court must act impartially and not prejudice a party. *Scudder v. Haug*, 201 Neb. 107, 266 N.W.2d 232 (1978). An examination of the record in this case clearly shows that the questions asked by the judge did not prejudice either party.

■ Nor was Denise denied her due process when the court refused to permit her counsel to examine the parties. The gen-

eral rule is that "[a] party has the right to cross-examine a witness with regard to an interest which affects credibility. Failure to permit such inquiry constitutes reversible error *if prejudice results to the complaining party*." (Emphasis supplied.) *L. J. Vontz Constr. Co. v. Alliance Indus.*, 215 Neb. 268, 272, 338 N.W.2d 60, 62 (1983). Our review of the record shows that both Denise and Mike were allowed to tell the judge their individual side of the story. Neither the record made at the hearing nor Denise's brief informs us of any additional inquiries her attorney would have asked on cross-examination; of any relevant evidence that would have been offered; or how, in any other manner, denial of participation by her counsel prejudiced her. Further, we would note that Denise was successful in having the requested protection order extended for 1 year. Since Denise was granted the relief which she sought, it cannot legitimately be argued that she was denied due process, and this assignment of error is without merit.

### (c) Denial of Motion for New Trial

A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997); *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996); *Hartley v. Guthmann*, 248 Neb. 131, 532 N.W.2d 331 (1995). Having determined that no error prejudicial to the rights of Denise has occurred, as explained above, we find that the trial court did not abuse its discretion by overruling her motion for new trial.

### 3. MIKE'S CROSS-APPEAL

### (a) Continuation of Protection Order for 1 Year

In his first assignment of error, Mike argues that the evidence adduced at the June 30, 1997, hearing "simply is insufficient for a court to issue the order in question." Brief for appellee at 10. Section 42-924 provides that a protection order should issue if the applicant can show that he or she is a "victim of domestic abuse or . . . has been willfully and maliciously harassed by a person who had the intent to terrify, threaten, or intimidate" that applicant. Neb. Rev. Stat. § 42-925 (Reissue 1993) provides that

such orders may be issued ex parte but that a hearing must be held to provide the adverse party an opportunity to show why the order should not remain in effect. Such a hearing was held in this case on June 30.

During that hearing, the trial court fully explored the allegations underlying Denise's application for a protection order. The judge asked Denise if the contents of the application and affidavit were correct, and she answered affirmatively. The judge then called Mike as a witness and asked him about each of the incidents. Mike's version of those events was, not surprisingly, different. The judge then recalled Denise and asked her to describe the incidents. The trial court then concluded that "[b]ased on the evidence that's been provided at the hearing here, I will extend the protection order, as it is currently limited in the Ex Parte Protection Order, for one year . . . ."

The trial court was presented with conflicting versions of the events underlying the issuance of the ex parte protection order and the application for extension. Although our review of the issuance of a protection order is de novo, we can, and in this case do, give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993); *Devor v. Devor*, 7 Neb. App. 549, 584 N.W.2d 670 (1998). Viewing the record in that light, we cannot and do not say that the trial court erred in its order extending the protection order for 1 year.

### (b) Argument That Mike Was Denied Procedural Due Process

Mike next complains that he was denied an opportunity to participate in the trial and, accordingly, was denied his due process rights. However, the record does not show that Mike requested that additional evidence be admitted, that additional questions be asked, or that Denise be cross-examined. The record instead shows that he was provided an ample and unfettered opportunity to present his version of the facts. There being no showing of prejudicial error, we accordingly reject this assignment of error.

We similarly dispose of Mike's argument that he was denied a hearing before an impartial decisionmaker. Mike does not

argue or in any manner allege that the trial court in this case was not impartial. In fact, in his brief, he concedes that "the judge may well have been impartial in this proceeding." Brief for appellee at 12. Our review of the record shows no sign of partiality. Accordingly, we will not further address this assignment of error.

### (c) Right to Court-Appointed Counsel

Finally, Mike argues that he was entitled to court-appointed counsel in this case and that the trial court erred in failing to inform him of that right. The Nebraska Supreme Court has held that under the U.S. Constitution, an indigent litigant has a right to appointed counsel, in either a civil or criminal case, when, as a result of the litigation, he or she may be deprived of his or her physical liberty. *Allen v. Sheriff of Lancaster Cty.*, 245 Neb. 149, 511 N.W.2d 125 (1994); *Carroll v. Moore*, 228 Neb. 561, 423 N.W.2d 757 (1988), *cert. denied* 488 U.S. 1019, 109 S. Ct. 817, 102 L. Ed. 2d 807 (1989). In *Lassiter v. Department of Social Services*, 452 U.S. 18, 26-27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the U.S. Supreme Court held that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured."

At the threshold, we note that in his brief, Mike asserts that "as a result of such order being issued, he faces criminal prosecution." Brief for appellee at 13. This is a misleading oversimplification of the case. Criminal prosecution is not a direct consequence of this order; § 42-924(3) provides that *violation* of the order, after service, is a Class II misdemeanor. Clearly, Mike does not face deprivation of his physical liberty merely because a protection order was entered.

Mike nonetheless argues that his situation is analogous to that set out in *Carroll v. Moore, supra,* in which an indigent defendant to a civil paternity action was held entitled to court-appointed counsel even though those proceedings would not lead directly to loss of liberty. There the Nebraska Supreme Court held that appointment of counsel was required because there was a "significant" threat of future incarceration from later proceedings arising out of a paternity determination,

including criminal sanctions for nonsupport and for contempt. 228 Neb. at 578, 423 N.W.2d at 767.

However, *Carroll v. Moore, supra,* should not be read as providing that an indigent defendant is entitled to court-appointed counsel in every civil proceeding that has some possibility of future incarceration for that defendant. Instead, in *Carroll v. Moore,* the Nebraska Supreme Court held that where incarceration is an indirect consequence, or only a possibility, a trial court, in determining whether counsel should be appointed, must balance three factors that were set out in *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976): (1) the private interests at stake; (2) the risk of erroneous results under current procedures, considered with the probable value of the suggested procedural safeguard; and (3) the governmental interests at stake.

Turning to the first element, the private interests at stake, we note, as did the Nebraska Supreme Court in *Carroll v. Moore, supra,* paternity actions are complex and critical proceedings which, though civil in nature, are "'penal in some aspects'" and may well have a long-lasting res judicata effect in any later litigation involving that father and child. 228 Neb. at 577, 423 N.W.2d at 766-67. In addition, the consequences of a paternity adjudication will affect the adverse party regardless of any actions he or she does or does not take. In contrast, protection order proceedings are simple and straightforward, of limited duration, and with no further consequences for the adverse party so long as that party does not violate the order. Thus, the private interests at stake in protection order proceedings are far less than in the case of paternity proceedings.

Similarly, with regard to the second *Eldridge* prong of the risk of erroneous deprivation of a liberty interest, it is clear that any such risk is considerably lower in protection order proceedings than it is in paternity proceedings. As discussed above, there is no direct threat of incarceration as a result of such proceedings. Given the limited nature of the protection order, the procedural safeguards already in place, and the straightforward factual nature of the dispute, the risk of an erroneous result is not such as to warrant the appointment of counsel to indigent respondents.

Finally, it is necessary to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional . . . procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 335. The State's interest in this type of proceeding is to provide an informal, prompt, and flexible procedure for seeking protection orders, while nonetheless preserving the right of an adverse party to be heard. Requiring the appointment of counsel to indigent defendants in such cases would seriously and unnecessarily complicate and slow down that process.

In sum, having engaged in the balancing of interests as required under *Mathews v. Eldridge, supra*, we conclude that an indigent adverse party to protection order proceedings has no constitutionally mandated right to court-appointed counsel. This assignment of error is rejected.

### V. CONCLUSION

For the reasons set forth above, the order of the district court entered on June 30, 1997, the district court's subsequent denial of the motion for new trial by Denise, and the district court's denial of the motion to expand the scope of the protection order are affirmed.

AFFIRMED.